1

HOLLY ARTIS
3817 Fensom Way
Modesto, CA 95356
(925) 339-7810
lubmatwins@yahoo.com

2

3

4

5

*Plaintiff, In propria persona*

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

LB

11

12

HOLLY ARTIS,

        Plaintiff,

13

    v.

14

JOHN DEERE LANDSCAPES, INC.;
DEERE & COMPANY,

15

16

        Defendants.

17

18

Case No.:

CV 10-5289

COMPLAINT FOR:

(1) **GENDER DISCRIMIINATION (TITLE
    VII OF THE CIVIL RIGHTS ACT OF
    1964 - 42 U.S.C. § 2000e, *et seq.*); and**

(2) **GENDER DISCRMIINATION
    (CALIFORNIA FAIR EMPLOYMENT
    AND HOUSING ACT – Cal. Gov. Code §
    12900, *et seq.*)**

**JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.      Plaintiff Holly Artis ("Plaintiff" or "Ms. Artis"), brings this action for gender discrimination in employment by Deere & Company and its business division John Deere Landscapes, Inc. ("DEERE" or "Defendant") and upon information and belief, alleges as follows:

**PARTIES**

2.      Plaintiff is a female who, at all times relevant to this complaint, was a resident of Livermore, California.

3.      Defendants JOHN DEERE LANDSCAPES, INC. and DEERE & COMPANY (hereinafter collectively identified as "DEERE" or "Defendant") are national distributors of farm, agricultural, and landscaping equipment.

4.      Deere & Company is a Delaware corporation headquartered in Moline, Illinois. Deere & Company transacts and regularly transacts significant business in California and in this District. Deere & Company is composed of four divisions or "major business segments" employing approximately 50,000 people nationally.  The four divisions are as follows: (1) Agricultural Equipment; (2) Commercial & Consumer Equipment; (3) Construction & Forestry; and (4) John Deere Credit.

5.      John Deere Landscapes Inc. ("JDL") is a wholly owned and operated business division under Deere's Commercial and Consumer Equipment division.  JDL provides wholesale nursery, irrigation, lighting and landscape supplies to the landscape and irrigation industry.  JDL maintains locations throughout California, including a location in this District at 5380 Brisa Street Livermore, CA 94550-2504.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      This Court has personal jurisdiction over this action by the fact that Defendants are corporations or other businesses duly licensed to do business in California, which also regularly conduct business in this District.

8.      Venue is proper within this District pursuant to 28 U.S.C. §1391(b) and 42 U.S.C.

§ 2000e-5(f)(3). Defendant DEERE maintains distribution stores throughout California and this District, and is subject to personal jurisdiction in this District. Moreover, a substantial part of the events or omissions giving rise to the claim occurred in this District and the discriminatory acts and omissions giving rise to Plaintiff's claims occurred in this District. But for the discriminatory acts, Plaintiff would have worked in this District.

**FACTUAL ALLEGATIONS**

9.      In April 2007, Ms. Artis contacted the Livermore, California branch of John Deere Landscapes ("Livermore Branch") to inquire about job openings. An employee who said he was leaving his position that the Livermore branch informed Ms. Artis that the Livermore Branch was likely be hiring in the upcoming weeks. During this conversation, the exact title of the open position was not specified.

10.     On or around April 27, 2007, Ms. Artis submitted an application directly to the Livermore Branch for a sales or customer service job. She spoke to the assistant manager, who identified himself as Francisco Rios. Mr. Rios informed Ms. Artis that there was at least one such opening at that location.

11.     Ms. Artis filled out an application. The branch manager, who identified himself as Mr. Shawn Nielsen, asked her to stay for an interview, which she did.

12.     At the outset of the April 27, 2007 interview, Mr. Nielsen informed Ms. Artis that DEERE "frowns upon hiring women." He indicated that the position for which she applied mainly consisted of inside sales duties but warned that the job would also require some shipping and receiving duties which would involve lifting of sod and pipe. Ms. Artis demonstrated that she could perform the lifting duties by lifting some nearby pipe. At the end of the interview, Mr. Nielsen indicated that Ms. Artis was qualified for the position, but that he would have to run the idea of hiring her past his regional manager. Based on Mr. Nielsen's comments, Ms. Artis understood this to mean that he had to run the decision by the regional manager because she was a woman.

13.     Mr. Rios interviewed Ms. Artis directly after her interview with Mr. Nielsen. Mr. Rios indicated satisfaction with Ms. Artis's skills and experience and began to tell her more about

- 2 -

COMPLIANT

1   the job.  At the end of the interview, Mr. Nielsen asked Mr. Rios about his thoughts about hiring

2   Ms. Artis, and Mr. Rios indicated that he thought that the Livermore Branch should hire her.

3       14.     Mr. Nielsen and Mr. Rios led Ms. Artis to believe the job was hers, and they had

4   her fill out hiring paper work, including a W-2 Form and a background check release.

5       15.     In the days following the interview, Ms. Artis followed up with Mr. Nielsen

6   several times by telephone. He repeatedly indicated that he had not made a decision about hiring

7   her because he still needed to talk to his regional manager.

8       16.     On or around May 4, 2007, Ms. Artis contacted Mr. Nielsen again by telephone.

9   He told Ms. Artis that DEERE had decided to "move people around" instead of hiring and,

10  therefore, would not be offering her a job.

11      17.     On or around May 4, 2007, after DEERE denied Ms. Artis the position, Eric

12  Meier, a man, contacted the DEERE Livermore Branch by telephone to inquire about job

13  openings.  The Livermore Branch informed Mr. Meier that the branch was still hiring for three or

14  four positions and encouraged him to come in and apply.

15      18.     On or around May 4, 2007, after DEERE denied Ms. Artis the position, Erin

16  Moore, a woman, called the DEERE Livermore Branch by telephone to inquire about job

17  openings.  After responding to questions regarding her qualifications and being put on hold while

18  the Assistant Manager spoke to the Branch Manager, Ms. Moore was told not to apply because

19  the branch was not hiring for any positions.

20      19.     On May 7, 2007, Mr. Ezekiel Nunez applied for and was ultimately hired for the

21  position for which Ms. Artis applied.  Mr. Nunez has no prior work experience with any of the

22  listed duties and responsibilities of a DEERE Inside Sales Associate or Customer Sales and

23  Services Representative and did not meet the listed qualifications for the position.

24      20.     Ms. Artis was well-qualified for the position she applied for at DEERE.  She had

25  significant experience in the listed duties and responsibilities of both Inside Sales Associate or

26  Customer Sales and Services Representative.  She had nearly five years of customer service and

27  sales experience. Additionally, Ms. Artis had experience in data entry, advertising, and ordering

28  and maintaining inventory.  Further qualifying Ms. Artis for the job are her telephone sales and

- 3 -

1    service, sales processing, and communications skills.  In addition to customer service, and sales

2    experience, she helped out on her family farm, where she engaged in manual labor, including

3    lifting and hauling.

4        21.    DEERE posted or reposted a position online for an Inside Sales Associate position

5    at the Livermore Branch in July of 2007.  Plaintiff is informed that, although two women applied

6    for the job, they were not hired.  Additionally, Ms. Artis's resume indicates that she was well-

7    qualified for the position posted, but DEERE did not contact or offer her the position.  Apparently

8    lacking a male applicant, qualified or otherwise, DEERE opted not to fill the position.

9        22.    On or around September 28, 2007, Ms. Artis filed a charge of discrimination with

10   the California Department of Fair Employment and Housing ("FEHA") and the Equal

11   Employment Opportunity Commission ("EEOC").  Attached to this Complaint as Exhibit A and

12   incorporated by reference is a copy of that charge.

13       23.    On or around November 5, 2007, the Department of Fair Employment & Housing

14   ("DFEH") issued a Notice to Ms. Artis informing her of her right-to-sue and that the time period

15   in which she was required to file a lawsuit was tolled during the EEOC's investigation of her

16   claims.

17       24.    The EEOC investigated her claims and, on August 26, 2010, Ms. Artis received a

18   copy of her Notice of Right to Sue from the EEOC dated August 24, 2010.  This Complaint is

19   therefore timely filed.  Attached to this Complaint as Exhibit B and incorporated by reference is a

20   copy of that notice.

21       25.    DEERE has discriminated against Ms. Artis on the basis of her sex by, *inter alia*,

22   denying her employment position in favor of a less-qualified male.

23       26.    DEERE has subjected women applicants and would-be applicants to differing

24   criteria for employment and has provided false and misleading information about job openings

25   and qualification requirements to would-be women applicants. When women have inquired about

26   employment, DEERE personnel have inaccurately told them the store is not hiring.

27       27.    DEERE's customer service and sales representative positions are held almost

28   exclusively by men.

- 4 -

28.     DEERE's divisions use uniform hiring criteria and centrally developed job descriptions for open positions, including but not limited to sales, customer service, and production.  While DEERE posts many job openings online, some positions are filled that are not posted.

29.     DEERE has failed to hire qualified women for open positions posted on and off online and has hired less qualified men instead.

30.     DEERE has failed to adhere to its hiring guidelines posted online and has instead permitted managers to rely on unvalidated criteria in making employment decisions, focusing on whether applicants are male, rather than whether they have relevant job experience and would be responsible, effective sale and customer services employee who could perform their jobs well.

31.     Plaintiff seeks an award of compensatory damages, punitive damages, and injunctive relief.

## FIRST CAUSE OF ACTION

### GENDER DISCRIMINATION IN EMPLOYMENT
(42 U.S.C. §2000e *et seq.*)

32.     Plaintiff incorporates paragraphs 1 through 31 as alleged above.

33.     Plaintiff is a female, a member of a protected class by virtue of her sex.

34.     Plaintiff met the qualifications for the position that DEERE sought to fill.  She boasted nearly five years of prior retail and customer service experience which included responding to customer questions concerning products, resolving a variety of customer service issues, processing sales transactions, responding to inquiries and assisting customers with sale of products over the phone, data entry, advertising, ordering and maintaining inventory.  She was also capable of assisting in the unloading of trucks.

35.     Despite the Plaintiff's qualifications, and acknowledgement by the Livermore Branch Manager that she was well-qualified for the job, DEERE denied Plaintiff the position.

36.     After the DEERE declined to hire Plaintiff for the position, the position remained open, and DEERE continued to seek applicants for the position.  DEERE continued to accept applications from men while preventing women from applying.

- 5 -

37.     DEERE's Livermore Branch accepted Mr. Nunez's application for the sales or customer services position on May 7, 2007 – three days after DEERE denied Plaintiff the same position, claiming that DEERE had decided to "move people around" instead of hiring somebody.

38.     DEERE ultimately hired Mr. Nunez for the position for which Plaintiff applied. Mr. Nunez was not a more qualified candidate for the position and did not have the qualifications or required experience for the position.

39.     DEERE has maintained a system that is intentionally discriminatory, subjective, standardless, and arbitrary with respect to recruitment and hiring.

40.     DEERE's intentionally discriminatory system has an adverse disparate impact on women applicants.  This system is not and cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged business necessity.

41.     DEERE's discriminatory policies or practices described above have denied Plaintiff and other women applicants employment, resulting in the lost of past and future wages and other job benefits.

42.     The foregoing conduct constitutes illegal, intentional discrimination in the form of unjustified disparate impact prohibited by 42 U.S.C. §2000e, *et seq.*

43.     Plaintiff requests relief as hereinafter provided.

## SECOND CAUSE OF ACTION

### GENDER DISCRIMINATION IN EMPLOYMENT
**(California Fair Employment and Housing Act, Government Code § 12940 *et seq.*)**

44.     Plaintiff incorporates paragraphs 1 through 43 as alleged above.

45.     Plaintiff is a female, a member of a protected class by virtue of her sex.

46.     Plaintiff met the qualifications for the position DEERE's Livermore Branch sought to fill, as described in the preceding paragraphs incorporated herein.

47.     Despite the Plaintiff's qualifications, and acknowledgement by the Livermore Branch Manager that she was well-qualified for the job, DEERE denied Plaintiff the position.

48.     After the DEERE declined to hire Plaintiff, the position remained open and

- 6 -

1    DEERE continued to seek applicants for the position. DEERE continued to accept applications

2    from men while preventing women from applying.

3         49.    DEERE's Livermore Branch accepted Mr. Nunez's application for the sales or

4    customer services position on May 7, 2007 – three days after DEERE denied Plaintiff the same

5    position, claiming that DEERE had decided to "move people around" instead of hiring somebody.

6         50.    DEERE ultimately hired Mr. Nunez for the position for which Plaintiff applied.

7    Mr. Nunez was not a more qualified candidate for the position did not have the qualifications or

8    required experience for the position.

9         51.    DEERE has maintained a system that is intentionally discriminatory, subjective,

10    standardless, and arbitrary with respect to recruitment and hiring. The system has an adverse

11    disparate impact on women applicants and employees. This system is not and cannot be justified

12    by business necessity, but even if it could be so justified, less discriminatory alternatives exist that

13    could equally serve any alleged business necessity.

14         52.    DEERE's discriminatory policies or practices described above have denied women

15    applicants opportunities for employment resulting in the loss of past and future wages and other

16    job benefits. DEERE also breached its affirmative duty to take all reasonable steps necessary to

17    prevent employment discrimination from occurring.

18         53.    The foregoing conduct constitutes illegal, intentional discrimination as unjustified

19    disparate impact prohibited by Government Code section 12900, *et seq.*

20         54.    Plaintiff requests relief as hereinafter provided.

21                      **ALLEGATIONS REGARDING RELIEF**

22         55.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs

23    alleged herein, and the injunctive relief sought in this action is the only means of securing

24    complete and adequate relief. Plaintiff is now suffering and will continue to suffer irreparable

25    injury from defendant's discriminatory acts and omissions.

26         56.    In addition, Plaintiff suffers and continues to suffer humiliations, embarrassment,

27    and anguish, all to her damage in the amount according to proof.

28         57.    DEERE performed the acts herein alleged with malice, fraud, oppression, and/or

1    reckless indifference.  Plaintiff is thus entitled to recover punitive damages in an amount

2    according to proof.

3                                          **PRAYER FOR RELIEF**

4    WHEREFORE, Plaintiff prays for relief as follows:

5            58.    A preliminary and permanent injunction against DEERE and its officers, agents,

6    successors, employees, representatives, and any and all persons acting in concert with them, from

7    engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

8            59.    An order that DEERE institute and carry out policies, practices, and programs that

9    provide equal employment opportunities for all women, and that eradicate the effects of its past

10   and present unlawful employment practices;

11           60.    An order that instating Plaintiff to her rightful position at DEERE;

12           61.    All damages sustained as a result of DEERE's conduct, including all actual,

13   compensatory, consequential and general damages, including but not limited to damages for loss

14   of income, emotional distress, humiliation, embarrassment, and anguish, according to proof;

15           62.    Exemplary and punitive damages in an amount commensurate with DEERE's

16   ability to pay and deter future conduct;

17           63.    Costs incurred herein, including reasonable attorneys' fees to the extent allowable

18   by law;

19           64.    Pre-judgment and post-judgment interest, as provided by law; and

20           65.    Such other and further legal and equitable relief as this Court deems necessary,

21   just, and proper.

22
     Dated: November 19, 2010
23                                                        By: _Holly Artis_ (signature)
24                                                              Holly Artis

25                                                        HOLLY ARTIS
                                                          3817 Fensom Way
26                                                        Modesto, CA 95356
                                                          (925) 339-7810
27
                                                          *In propria persona*
28
                                          - 8 -
                                      **COMPLIANT**

# "EXHIBIT A"

# "EXHIBIT A"

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | | ☐ FEPA<br>☑ EEOC | 550-2008-00016 |

California Department of Fair Employment and Housing and EEOC
*State or local Agency, if any*

| NAME (indicate Mr., Ms. or Mrs.) | HOME TELEPHONE (include area code) |
|---|---|
| Holly N. Artis | 925-292-1138 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 917 S. Livermore Avenue #3 | Livermore, California, 94550 | October 9, 1977 |

NAME OF THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (include area code) |
|---|---|---|
| Deere & Company | Cat. D (500+) | 309-765-8000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| One John Deere Place | Moline, Illinois 61265 | Rock Island |

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (include area code) |
|---|---|---|
| John Deere Landscapes, Inc. | Cat. D (500+) | 770-442-8881 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 5610 McGinnis Ferry Road | Alpharetta, Georgia 30005 | Fulton |

CAUSE OF DISCRIMINATION BASED ON K (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☑ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN   ☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 5/4/07 | |
| ☑ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I am a white female. In or around April 2007, I contacted the Livermore, California branch of John Deere Landscapes to inquire about job openings. John Deere Landscapes, Inc. is part of the Commercial & Consumer Equipment division of Deere & Company (collectively "John Deere"). When I contacted John Deere, I was informed by an employee that the Livermore branch would likely be hiring in the upcoming weeks. On or around April 27, 2007, I walked into the Livermore branch to submit an application. I spoke to the assistant manager, who identified himself as Fernando. Fernando told me that there was at least one opening at that location for a customer service position. I filled out an application, and the branch manager, who identified himself as Sean, asked me to stay for an interview, which I did.

At the outset of my interview with Sean, he stated that John Deere "frowns upon hiring women." He indicated that the position would require some shipping and receiving duties and would involve lifting of sod and pipe. I demonstrated that I could lift sod and pipe, and we continued with the interview. At the end of the interview, Sean indicated that I was qualified for the position, but that he would have to run the idea of hiring me past his regional manager. Based on Sean's comments, I understood this to mean that he had to run the decision by the regional manager because I am a woman.

Directly following my interview with Sean, Fernando interviewed me. Fernando indicated satisfaction with my skills and experience and began to tell me more about the job. At the end of the interview, Sean asked Fernando what he thought about hiring me, and Fernando stated that he thought they should bring me on.

In the days following the interview, I followed up with Sean several times by telephone. He repeatedly indicated that he had not made a decision because he still needed to talk to his regional manager. On or around May 4, 2007, I contacted Sean again by telephone. He told me that John Deere had decided to "move people around" instead of hiring and, therefore, would not be offering me a job.

Immediately thereafter, two of my friends contacted the John Deere Livermore branch to inquire about job openings. On or around May 4, 2007, Erin Moore, a woman, called the Livermore branch. She spoke to a man who identified himself as the assistant manager of the branch. When she asked whether John Deere was hiring for any positions, the assistant manager asked about her qualifications and stated that he had to speak to the branch manager. The assistant manager put Ms. Moore on hold. When he returned to the phone, he told Ms. Moore that John Deere was not hiring for any positions. On or around the same day, Eric Meier, a man, also contacted the Livermore branch by telephone. When he inquired whether John Deere was hiring for any positions, the manager stated that

John Deere was hiring and currently interviewing for three or four positions and invited Mr. Meier to come in to the store to fill out and application. Mr. Meier was not asked about his qualifications.

      I was well-qualified for the position I applied for at John Deere. I have four years of customer service and retail experience. Prior to applying to John Deere, I worked at Cruiser Customizing, Inc. in Livermore, California, as a customer service representative. My duties included processing orders, providing customer service, handling inventory and data entry. Prior to working at Cruiser Customizing, Inc., I worked two years at Kragen Auto Supply in Tracy, California, where I oversaw sales and delivery, processed orders, and offered customer service. I also worked at Cost Plus World Market in Tracy, California, where my duties included placing advertisements, providing customer service, ordering and maintaining inventory and data entry. In addition to retail experience, I grew up on a farm, where I engaged in manual labor, including lifting and hauling.

      I believe that I have been discriminated against by John Deere because of my gender in hiring based on the following:

1. I was well qualified for open positions at John Deere.
2. I was informed by the store manager that John Deere "frowns upon hiring women" and, in fact, I was not hired despite being qualified for the job.
3. The John Deere branch manager indicated I was qualified for the job, but later (falsely) told me that the branch was not hiring after running it by his regional manager.
4. John Deere informed a man that they were hiring for three or four positions, while on or around the same day they told me and another similarly-qualified woman that there were no openings.
5. I am informed and believe that all of John Deere's divisions use uniform hiring procedures and centrally developed job descriptions for open positions, including but not limited to sales, customer service, and production.
6. I am informed and believe that, while John Deere posts some job openings online, some positions are filled without posting.
7. I am informed and believe there are few women employed in John Deere's field offices, including but not limited to sales and customer service positions.
8. I am informed and believe that female applicants and would-be applicants are subjected to differing and higher criteria for employment, provided false and misleading information about job openings and qualification requirements, and are deterred from applying or pursuing applications for employment.

      I make this claim on my own behalf and on behalf of female applicants and deterred applicants for field office positions at John Deere who were denied employment. Based on comments to me by John Deere agents, I believe John Deere have a pattern and practice of discriminating against female applicants. I bring this charge on behalf of myself and similarly situated women who applied for or were deterred from applying for jobs at John Deere and were not hired because of their gender.

| | |
|---|---|
| ■ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedure. | NOTARY - (When necessary for State and Local Requirements) |
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| 9/28/07     _Holly Artis_ <br> Date         Holly Artis | SIGNATURE OF COMPLAINANT <br><br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

RECEIVED

OCT 0 2 2007

EEOC-SFDO

# "EXHIBIT B"

# "EXHIBIT B"

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:   Holly N. Artis
917 S. Livermore Avenue, #3
Livermore, CA 94550

**Received**

AUG 2 6 2010

From:   San Francisco District Office
350 The Embarcadero
Suite 500
San Francisco, CA 94105

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2008-00016 | Thomas P. Magee,<br>Investigator | (415) 625-5669 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, the paragraph marked below applies to your case:

☐   The EEOC is closing your case.  Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Michael Baldonado* — 8/24/10

Michael Baldonado,
District Director

(Date Mailed)

Enclosure(s)

cc:   JOHN DEERE LANDSCAPES
5610 Mcginnis Ferry Rd
Alpharetta, GA 30005

Jennie Lee Anderson

Andrus Anderson LLP
155 Montgomery Street
Suite 500
San Francisco, CA 94104

Enclosure with EEOC
Form 161-B (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before **7/1/10** – *not* 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, please make your review request <u>within 6 months</u> of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Francisco District Office**

350 The Embarcadero, Suite 500
San Francisco, CA 94105
(415) 625-5600
FAX (415)625-5675

## CONCILIATION AGREEMENT

Charge No. 550-2008-00016

In the Matter of:

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

and

John Deere Landscapes, Inc.
1 John Deere Place
Moline IL, 61265

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On September 28, 2007, a charge was filed by Ms. Holly Artis against John Deere Landscapes, Inc. (Respondent) under Title VII of the Civil Rights Act of 1964, as amended (Title VII), with the U.S. Equal Employment Opportunity Commission (EEOC). During the course of the investigation, a documents violation was discovered by the EEOC. Specifically, it was learned that John Deere Landscapes, Inc., failed to retain job applications for one year per CFR Vol. 29, Sec. 1602.14. This documents violation impacted the EEOC's ability to fully investigate the claim. Having investigated the issue and reasonable cause having been found, the parties do resolve and conciliate this matter as follows.

## GENERAL PROVISIONS

I.    EEOC agrees not to use the above-referenced charge as the jurisdictional basis for filing a lawsuit against the Respondent. However, nothing in this Agreement shall be construed to preclude EEOC from bringing suit to enforce this Agreement in the event that the Respondent fails to perform the promises and representations contained herein. Neither does it preclude EEOC from filing charges in the future. Respondent denies any liability for the discrimination alleged by Holly Artis in EEOC Charge No. 500-2008-00016.

Charge No. 550-2008-00016                                              Page 2
Conciliation Agreement
Holly Artis v. John Deere Landscapes, Inc.

2.   EEOC reserves all rights to proceed with respect to matters like and related to these
     matters but not covered in this Agreement and to secure relief on behalf of aggrieved
     persons not covered by the terms of this Agreement.

3.   The Parties agree that there shall be no discrimination or retaliation of any kind against
     any person because of opposition to any practice declared unlawful under Title VII; or
     because of the filing of a charge, giving testimony or assistance, or participation in any
     manner in any investigation, proceeding, or hearing under Title VII.

4.   Respondent agrees to accept all applications for employment submitted by job applicants
     in any form, including but not limited to, by U.S. mail, fax, private delivery services, via
     email or other electronic format, and when delivered by hand.

5.   Respondent agrees to develop a formal, structured and standardized system in all their
     California facilities for collecting and retaining job applications whereby applications
     will be retained for at least one year.

6.   Respondent agrees to provide training to any and all employees in their California
     facilities who would reasonably be expected to receive job application documents as
     defined and required by 29 CFR 1602.14. The training will include, but not be limited to,
     all managers and human resources personnel. Said employees will be informed about the
     legal requirements with regard to accepting and retaining job applications. They will be
     instructed to accept and retain job applications for at least one year. This training will
     take place no later than 90 days from the date this Agreement takes effect.

8.   Respondent agrees that EEOC may review compliance with this Agreement. As a part of
     such review, EEOC may require written reports regarding compliance, inspect
     Respondent's premises at reasonable times, interview employees, and examine and copy
     relevant documents. EEOC agrees that to provide reasonable notice to Respondent before
     conducting any relevant on-site inspections at Respondent's California facilities.

9.   This Agreement is effective upon the signature of the Commission's Director and shall
     remain in full force and effect until verification of full compliance with its terms is
     obtained.

## NOTICE REQUIREMENT

The Respondent agrees to sign and conspicuously post the Notice to Employees, found as
Attachment #1 of this Agreement, for a period of ninety (90) days from the effective date of this

Charge No. 550-2008-00016
Conciliation Agreement
Holly Artis v. John Deere Landscapes, Inc.

Page 3

Agreement.  The Respondent will post copies of the Notice on all employee bulletin boards at its California facilities.

## CONSENT FOR RELEASE OF NOTICE

In view of the voluntary undertaking on the part of all parties concerned, it is agreed that the contents of this Agreement shall be considered and treated as confidential.

## REPORTING

1.    The Respondent agrees to provide a report describing the manner in which it accepts and retains employment application in its California facilities in compliance with federal law. This report will be submitted to EEOC no later than 120 days from the date this Agreement takes effect.

2.    The Respondent agrees to provide a report describing the training(s) employees received with regard to accepting and retaining employment application in its California facilities in compliance with federal law. This report should include the full name, job title, and location of all employees who attended the training(s) and will be submitted to EEOC no later than 120 days from the date this Agreement takes effect.

3.    The Respondent agrees to provide a report stating the date and locations at which the notice in Attachment #1 was posted. This report will be submitted to EEOC no later than 120 days from the date this Agreement takes effect.

4.    The above reports will be sent to the District Director, U.S. Equal Employment Opportunity Commission, 350 The Embarcadero, Suite 500, San Francisco, CA 94105 (ATTN: Tom MaGee), within (120) days of the date this Agreement takes effect.

## SIGNATURES

I  have read the foregoing Conciliation Agreement, and I accept and agree to the provisions contained therein:

Charge No. 550-2008-00016
Conciliation Agreement                                          Page 4
Holly Artis v. John Deere Landscapes, Inc.


8/19/2010
Date

John Deere
[Name of John Deere's Representative here]
John Deere


Approved on behalf of the Commission:


8/24/2010
Date

Michael Baldonado
District Director


**NOTICE TO EMPLOYEES**

## NOTICE TO EMPLOYEES

This Notice is being posted as part of the remedy agreed to pursuant to a conciliation agreement between the Equal Employment Opportunity Commission (EEOC) and John Deere Landscapes, Inc..

Federal law requires that there be no discrimination against any member, employee or applicant for employment because of the individual's race, color, religion, sex, national origin, age (40 and over) or disability with respect to hiring, promotion, firing, compensation, or other terms, conditions or privileges of employment.

Federal Law also prohibits retaliation against any member or employee who files a charge of discrimination or who cooperates with the EEOC's investigation of a charge. The EEOC is committed to protecting members and employees who file charges or who are witnesses during an investigation including, if necessary, further court proceedings.

It is the policy of John Deere Landscapes, Inc. that neither its officials nor its supervisors will retaliate in any way against any member or employee who has filed a charge or provided testimony in the course of an investigation.

If you wish to report an instance(s) of discrimination, please contact _____ of John Deere Landscapes, Inc. at _____ or the U.S. Equal Employment Opportunity Commission at (415) 625-5600.

This notice will remain posted for ninety (90) days and will not be defaced.

8/19/2010
Date

[name of designated John Deere Landscapes representative here]
John Deere Landscapes, Inc.

## ATTACHMENT #1